UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ERIC WISE,

        Plaintiff,

v.                                            ACTION NO. 2:12cv696

DIRECTOR CHARLES E. SAMUELS, JR., et al.,

        Defendants.

## OPINION AND DISMISSAL ORDER

Plaintiff, a federal inmate proceeding pro se, originally filed this action in the United States District Court for the District of Colombia. The action was transferred to this court. By Order dated April 4, 2013, Plaintiff filed an Amended Complaint. D.E. # 14. Defendants, other than Defendant Shumate, then filed a Motion to Dismiss the Amended Complaint, or in the Alternative, a Motion for Summary Judgment. D.E. # 18. Plaintiff was advised of his right to respond pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he did so. D.E. # 22. Defendant Shumate subsequently appeared and also requested dismissal or summary judgment for the same reasons asserted by the other Defendants. D.E. # 25.[1] Plaintiff was again advised of his right to respond,

---

[1] Shumate filed an unopposed motion for an extension of time to respond to the Amended Complaint due to his military deployment. D.E. # 21. The court **GRANTS** this motion, and files his Motion to

but he did not file an additional response.

## I. Facts Alleged by Plaintiff

Plaintiff's Amended Complaint asserts claims pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), arising from officials' confiscation of certain written materials and other items from his cell. Plaintiff is incarcerated in Federal Correctional Institution Petersburg because of his convictions related to sexual offenses against a minor. Amended Compl. ¶ 4.01. The written materials and other items in question were removed from Plaintiff's cell after officials conducted a search of his cell on September 21, 2011. Id. ¶¶ 4.06-4.09. Some materials were returned to Plaintiff; Plaintiff's claims arise from items that were not returned to him. Id. ¶ 4.17. Specifically, Plaintiff claims that (1) a Playboy magazine and (2) certain "non-nude erotic" photos of adult women in bikinis were not returned. Id. ¶ 4.09. Plaintiff also complains about the confiscation of (3) non-sexual photos of him with his victim, whom he characterizes as his "teen girlfriend," and (4) logs of chats between him and his victim, some of which were sexual and some of which were not. Id. Plaintiff asserts that items 3 and 4 were evidence in his criminal case and that they were sent to him by his attorney three years prior to the search of his cell. Plaintiff asserts that items 3 and 4 were relevant to a pending habeas corpus case. Id. ¶ 4.13.

---

Dismiss, or in the Alternative, for Summary Judgment.

Plaintiff complains as well about (5) the removal of papers related to a pending civil case and a civil suit he planned to file. Id. ¶ 5.05. Plaintiff finally complains that additional materials, specifically, (6) "photos that depicted adult sexual nudity" and (7) "photos of clothed adults and staff alleges, but have not shown to be, of clothed minors," were seized during a subsequent search on February 21, 2012. Id. ¶ 4.34(a).

## II. Overall Applicable Legal Standards

Plaintiff asserts numerous claims arising from these facts. Plaintiff complains throughout the Amended Complaint and briefing that the institution did not follow its own rules and procedures. Any failure to follow institutional or state rules is, of itself, not a federal concern. See Riccio v. County of Fairfax, Va., 907 F.2d 1459 (4th Cir. 1990). The issue for this court is whether Plaintiff alleged facts that establish a violation of the Constitution or other federal laws.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must allege facts that permit the court to infer that all elements of each of the claims exist. See Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006).

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists 'no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of an essential element of the party's case. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). When the moving party has met its burden, the non-moving party must then present specific facts demonstrating that there is a genuine issue of material fact for trial. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### III. Analysis of Plaintiff's Claims

A. Claim A "Attorney-Client Rights"

The court now turns to the merits of Plaintiff's Claim A. Claim A arises from Plaintiff's contention that the attorney-client privilege was violated, and Plaintiff asserts resulting violations of the First, Fourteenth, and Sixth Amendments. First, Plaintiff assumes that, because items (3) and (4) were mailed to him by his attorney, these items are protected by the attorney-client privilege. Attorney-client privilege attaches to confidential communications between a lawyer and his client made in an effort to obtain legal services. See U.S. v. Lentz, 524 F.3d 501 (4th Cir. 2008). According to Plaintiff, items (3) and (4) were evidence in

4

Plaintiff's criminal case, and as such are not confidential. Further, they are not communications between Plaintiff and his counsel. The mere fact that these items were mailed to Plaintiff by his attorney does not alter their character. Accordingly, the attorney-client privilege provides no protection for these items. Even were the attorney-client privilege applicable, the First Amendment does not protect an "inmate's legal material from perusal by a third party." Fennell v. Allen, No. 3:09cv468, 2011 WL 2144560, *2 (E.D. Va. May 31, 2011). Further, a violation of attorney-client privilege does not constitute a cognizable Sixth Amendment violation. Clutchette v. Rushen, 770 F.2d 1469, 1471 (9th Cir. 1985) ("[T]he attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right."). Plaintiff did not specify any facts indicating that any of these events impacted his relationship with counsel in a criminal proceeding against him, such that the Sixth Amendment would be implicated.

Plaintiff next assumes that his rights were violated because legal mail was allegedly opened outside of his presence, when the envelope in which they were contained was opened during the search. Even assuming the packages contained some attorney correspondence in addition to the evidence discussed above (which was not alleged), a few instances of opening legal mail outside of the presence of the inmate does not indicate a constitutional

5

violation. Buie v. Jones, 717 F.2d. 925, 926 (4th Cir. 1983). Finally, Plaintiff alleged no injury to his right to access the courts as a result of the opening of any allegedly legal mail, so no constitutional claim, including a Fourteenth Amendment claim, is stated. See Lewis v. Casey, 518 U.S. 343, 352-54 (1996). The court, therefore, **GRANTS** the Motions to Dismiss Claim A.

B.  Claim B "Access to the Courts"

Plaintiff asserts in Claim B that his access to the courts was impeded because of the confiscation of certain items. Specifically Plaintiff complains about the confiscation of items 3 and 4, about the seizure of documents related to a pending civil case filed by him (Action No. 2:09cv351), and about the seizure of documents relating to a planned suit against the institution concerning "security."

Inmates do retain a fundamental constitutional right of access to the courts. Lewis, 518 U.S. at 346. Importantly, however, an actual injury is required to state a claim for denial of access to the courts. Id. at 353. The prisoner asserting the claim must show specific harm or prejudice from the allegedly denied access. Strickler v. Waters, 989 F.2d 1374, 1384-85 (4th Cir. 1993). "Thus, in order to plead a backward looking denial of access to the courts claim, a plaintiff must identify, with specificity, a non-frivolous legal claim that the defendants's actions prevented him from litigating." Fennell, 2011 WL 2144560 at *2. The allegedly

6

frustrated legal claim must be plead with the specificity required by Fed. R. Civ. P. 8(a). Christopher v. Harbury, 536 U.S. 403, 417-18 (2002).

Here, Plaintiff failed to identify any facts indicating he suffered an actual injury in that a claim demonstrated to be viable was impeded by the confiscation of any items. Indeed, he does not dispute that his habeas corpus claim pending in a Texas state court had already been fully briefed months before the time of the search. D.E. # 19 Ex. 10 (docket sheet from the habeas case). Plaintiff does not contend that he had any subsequent non-hypothetical need for the materials in connection with the habeas case. Plaintiff next claims that materials related to Action No. 2:09cv351 were taken, but he does not dispute that the dispositive motions in this case were also fully briefed prior to the first search. See D.E. # 87 in Action No. 2:09cv351 (last submission from the parties dated August 16, 2011, which precedes the searches at issue here). Accordingly, Plaintiff suffered no injury from any seizure of these materials.

Finally, Plaintiff complains about the seizure of materials relevant to a case "soon to be filed against [prison officials] concerning security." Amended Compl. ¶ 5.05. Unless this suit relates to Plaintiff's conviction or the conditions of his confinement, no constitutional protections attach to Plaintiff's litigation activities. Even assuming the "security suit" was

7

related to conditions of confinement, Plaintiff failed to provide any detail about the claim as is required or to describe any impact of the seizure of the materials on the assertion of the claim (other than the allegation that opposing parties obtained unspecified "unfair legal advantage" from reading his files). Indeed, the materials not returned to Plaintiff[2] bear no ascertainable, logical relation to any suit related to "security." Plaintiff, therefore, failed to establish a viable claim of denial of his right to access the courts. Accordingly, the court **GRANTS** summary judgment on Claim B.

C.  Claim C "1st Amendment Rights"

Claim C alleges that Defendants violated Plaintiff's First Amendment rights by depriving Plaintiff of his right to "view lawful materials by depriving Plaintiff of the same." Am. Compl. ¶ 5.06. Under Turner v. Safley, 482 U.S. 78, 89 (1987), even if a prison regulation or restriction impinges upon an inmate's First Amendment rights, such a restriction will be upheld if it is reasonably related to legitimate penological interests. Deference is shown to prison officials, and "federal courts have consistently upheld prison officials' determinations that certain materials [such as pornography or sexually suggestive photographs] are detrimental to a sex offender's rehabilitation." Hughbanks v. Dooley, Civ. No. 10-4064, 2012 WL 346673, *18 (D.S.D. Feb. 2,

---

[2] See supra at 2 (materials identified).

2012).

The Bureau of Prisons ("BOP") provides Sex Offender Management Programs ("SOMP") to manage and treat its sex offenders. Plaintiff contends that SOMP was not in place until 2013, relying on a memo describing the program in detail that was issued in 2013. SOMP, however, was in place as of 2008. D.E. # 19 Ex. 1., D.E. # 23 Ex. 1 (2007 memo describing activation of program at FCI Petersburg). Additionally, Plaintiff himself specifically agreed to participate in SOMP as of 2010. He signed a document, which explained to him that the "assessment/evaluation component of SOMP is non-voluntary" in 2010, well before the searches conducted in this case. D.E. #19 Ex. 1 at 9. Plaintiff's contention that the BOP lacked authority at the time of the searches to regulate his possession of materials deemed risk-relevant is rejected as flatly incorrect.

Here, Correctional Officer Howard consulted with BOP psychiatry and legal staff about the particular materials at issue in this case. D.E. # 19 Ex. 1 ¶ 14 and Ex. 6 ¶¶ 6-8. Plaintiff readily admits he is a sex offender, and he does not dispute that the prison psychiatrist determined that the items in question were "risk-relevant," meaning they had the potential to contribute to future sexual offending behavior. Additionally, Plaintiff does not dispute that he was explicitly prohibited from possessing "any pornographic, sexually oriented or stimulating materials" during his term of ordered supervised release that would follow his

9

incarceration. Id. Ex. 2 at 4 ¶ 6. Prison officials here advanced a variety of reasons why they determined that Plaintiff should not have the materials that were taken, including Plaintiff's personal safety and institutional order. D.E. # 19 at 5.

Plaintiff disagrees with the officials' assessments that the removed materials were a threat, detrimental, or risk-relevant, and he asserts that the prison officials were not <u>required</u> to take the items under the program in effect at the time. The critical issue is not, however, whether prison officials were demonstrably correct in their assessment.[3] Officials are entitled to qualified immunity when their assessments are incorrect. Officials can be held liable, only if they are shown to have known that their actions would violate a clearly established right.[4] <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). Plaintiff advances no facts indicating that the Defendants would have suspected that taking away the materials

---

[3]Indeed, officials "need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." <u>Mauro v. Arpaio</u>, 188 F.3d. 1054, 1060 (9th Cir. 1999).

[4]"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, __ U.S. __, 131 S. Ct. 2074, 2080 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> at 2083 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

10

would have violated a clearly established right of Plaintiff's. See Stauffer v. Gearhart, 741 F.3d 574, 583-84 (5th Cir. 2014) (finding qualified immunity applied to sex offenders' claims arising out of restrictions on reading materials). Case law, including the cases cited by Plaintiff, generally supports the restriction of pornographic and sexual materials within prison. E.g., Amatel v. Reno, 156 F.3d 192 (D.C. Cir. 1998) (upholding generally applicable restrictions on sexual pictorial content); see also Moreland v. Holderfield, No. 1:12cv1132, 2013 WL 6665716, *3 (E.D. Va. Dec. 13, 2013) (rejecting as "border[ing] on the frivolous" sex offender's claim that seizure of materials determined to be risk-relevant violated the First Amendment). Notably, Plaintiff advances no reasons why it would have been unreasonable for correctional officers to conclude that Plaintiff should not be permitted materials while incarcerated that would be denied him under the terms of his supervised release after he was freed.

The court **GRANTS** summary judgment as to Claim C.

D. Claim D "Property Rights"

Claim D complains that Plaintiff's property rights were violated when his property (presumably items 1-7, but possibly all items taken, even including those removed only temporarily) was taken without due process in violation of the Fourth and Fifth Amendments. Inmates are not, however, granted Fourth Amendment protection because inmates have no reasonable expectation of privacy

in their cells. Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"). Similarly, Plaintiff's claim of a due process violation with regard to the confiscated items fails because Plaintiff had adequate post-deprivation remedies to challenge the seizure of items. Id. at 533 n.14 ("intentional deprivation of property does not give rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy"). Here, Plaintiff describes how he availed himself of the full range of adequate BOP remedies. Am. Compl. ¶¶ 4.36-4.55. The court **GRANTS** the Motions to Dismiss Claim D.

E.  Claim E "Cruel and Unusual Punishment"

Plaintiff next contends in Claim E that the Eighth Amendment was violated because the cell block searches were conducted to harass him. Plaintiff has alleged no serious physical or emotional injury or threatened injury as a result of the searches. According to the Fourth Circuit, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." Strickler, 989 F.2d at 1381. Plaintiff's claim of cruel and unusual punishment fails, and the court **GRANTS** the Motions to Dismiss it. See Manning v. Booth, Civ. No. 04-2730, 2005 WL 1200122, *2 (D. Md. May 20,

12

2005) (dismissing factually similar claim).

F.  Claim F "Supervisory Liability"

Finally, Claim F asserts conclusorily that Defendant Wilson should be held responsible as a supervisor. Vicarious liability does not apply to Bivens actions, Iqbal, 556 U.S. at 676, and Plaintiff does not allege any non-conclusory facts indicating Wilson's personal involvement in any of the actions challenged other than to deny grievances. Amended Compl. ¶¶ 4.42, 4.52. Denying grievances does not support liability because inmates have no constitutional right to the grievance system or any particular response to grievances. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Further, Plaintiff failed to establish any underlying constitutional violations by any of the other Defendants, so any claims of Wilson's supervisory liability necessarily fail. Claim F is therefore **DISMISSED**.

G.  Claims for Administrative Procedures Act Review

Plaintiff also asserts certain claims for review under the Administrative Procedures Act ("APA"). See Amended Compl. ¶¶ 7.01-7.06. Claims arising from actions in connection with BOP policies or programs for treating sex offenders are specifically exempted from the APA. 18 U.S.C. § 3625 (exempting from APA review "any determination, decision, or order" under the subchapter, which includes 18 U.S.C. § 3621(f), authorizing the management and treatment of sex offenders). The determinations to remove the items

13

from Plaintiff and to discipline him for their possession (as challenged in Paragraphs 7.01, 7.02, and 7.04) were made pursuant to sex offender treatment programs, and Paragraph 7.03 is a challenge to the sex offender treatment program itself. Therefore, these claims cannot be reviewed pursuant to the APA. Additionally, Plaintiff's Bivens claims provided him an adequate vehicle for challenging the actions of Defendants, foreclosing APA review, which is available only when there is no other adequate remedy. See Jacobus v. Huerta, No. 3:12cv2032, 2013 WL 673233, *13 (S.D. W. Va. Feb. 22, 2013) (dismissing inmate's APA claims because of availability of FTCA and Bivens as vehicles for asserting his rights). Finally, Plaintiff failed to exhaust the claims asserted in Paragraphs 7.04, 7.05, and 7.06 of the Amended Complaint, further depriving this court of jurisdiction to consider the claims. 5 U.S.C. §§ 702, 704.

Plaintiff's claims under the APA cannot be considered by this court, and are therefore **DISMISSED**.

H.   Other Relief Sought

Plaintiff requested injunctive, mandamus, and declaratory relief related to his claims. As related to all of Plaintiff's claims but Claim C, any such relief is **DENIED** because the court dismissed the underlying claims. The court dismissed Claim C on the basis of qualified immunity. Qualified immunity does not shield defendants sued in their individual capacity from prospective

equitable relief. Plaintiff does request the prospective return of all materials seized and not returned during the first search.[5] The court **DENIES** Plaintiff's request for an order requiring the return of the materials. The determination - that the erotic, sexual, and victim-related materials taken from Plaintiff[6] were risk-relevant and that therefore Plaintiff would not be permitted to keep them - was reasonably related to legitimate penological goals under the factors in Turner, 482 U.S. 78, as set forth in D.E. # 19 at 22 and D.E. # 23 at 5-6. Additionally, Defendants have stated in Affidavits that the materials seized related to the criminal case are retained in Plaintiff's central file, which Plaintiff may review under supervision. D.E. # 19 Exs. 6 ¶ 8, 7 ¶ 6. Plaintiff states that he does not believe these items are in his file, but he does not present any evidence or affidavit attesting to their absence to counter the sworn representation that an officer "personally reviewed" the file and confirmed their presence. Id. Accordingly, Plaintiff has not demonstrated any basis for extraordinary relief.

---

[5]Plaintiff specifies that he does not seek the return of anything confiscated during the second search on February 21, 2012. D.E. # 22 at 9.

[6]Specifically, the confiscated items were an issue of Playboy, provocative photos of young women in bikinis, and exhibits from the criminal case.

H.  Motion for Judge Reassignment

Plaintiff objects that all of his cases have been assigned to the undersigned judge; he requests reassignment to another judge. D.E. # 24. "Local rules governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants." Sinito v. U.S., 750 F.2d 512, 515 (6th Cir. 1984). Further, a litigant does not "have the right to have his judge selected by a random draw." Id. Plaintiff presented no other basis that would warrant recusal. This motion is **DENIED**.

## IV.  Conclusion

In accordance with the above rulings, this action shall be **DISMISSED**, and the Clerk shall enter judgment for the Defendants.

Plaintiff may appeal from this Opinion and Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Opinion and Dismissal Order. If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Dismissal Order to Plaintiff and to counsel for Defendants.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

March 26, 2014